## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEONARD HROMEK,** | : | **No. 3:23cv549** |
| **KIMBERLY HROMEK, and** | : | |
| **MICHAELLA PACK,** | : | **(Judge Munley)** |
| **Administrators of the Estate** | : | |
| **of Nicholas P. Hromek;** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **BOROUGH OF EXETER and** | : | |
| **CHIEF SCHLAGEL, Exeter** | : | |
| **Borough Police Department,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the court for disposition are two motions to dismiss plaintiffs' civil rights complaint involving the death of Nicholas P. Hromek.  Defendant Chief Schlagel has moved to dismiss Counts I, V, and VI of the complaint and Defendant Borough of Exeter ("Exeter") has moved to dismiss Counts II, III, and IV.  The parties have briefed their respective positions, and the motions are ripe for decision.

**Background**[1]

This is a civil rights action involving the suicide of Nicholas P. Hromek (hereinafter "Hromek" or "decedent"). (Doc. 1, Compl.) On the night of August 27, 2021, the decedent, Hromek attended a birthday party with his girlfriend, Brianna Scutt. (Id. ¶ 12). Scutt and Hromek left the party separately and returned to their respective homes. (Id. ¶¶ 13-14). Hromek lived alone in a single-family residence that he rented in Exeter, Luzerne County, Pennsylvania. (Id. ¶¶ 15-16).

After returning home to his residence at approximately 2:30 a.m., Hromek made a video call to Scutt. (Id. ¶ 18). During most of the call, the telephone's camera faced the ceiling. (Id. ¶ 19). At one point, however, Hromek angled the camera in front of himself, and Scutt saw that he had a black rope around his neck. (Id. ¶ 20). Scutt asked Hromek what was happening, and he did not answer. Instead, he discontinued the video call. (Id. ¶ 22). Scutt unsuccessfully attempted to reach Hromek via the telephone again. (Id. ¶ 23).

Scutt feared for Hromek's life and called 911. She lived approximately twenty miles from Hromek's residence and believed that the police could travel to

---

[1] These brief background facts are derived from plaintiff's second amended complaint. At this stage of the proceedings, we must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

2

his house faster than she could.  (Id. ¶ 24).  Scutt informed 911 that Hromek was suicidal and had a rope around his neck.  (Id. ¶ 25).  She also stated that Hromek had told her in January 2021 that he had a suicide plan.  (Id. ¶ 26).  She told the 911 operator that Hromek lived alone and had no weapons.  (Id. ¶ 27).  After speaking with the 911 operator, Scutt believed that police were being dispatched to check on Hromek's welfare and waited to hear from them instead of trying to reach the property herself.  (Id. ¶ 28).

The Police Chief of Exeter, Defendant Schlagel ("Schlagel")[2] was dispatched to respond to the 911 call. (Id. ¶ 29).  The Greater Pittston Regional Ambulance - Medic 29 ("Medic 29")  was also directed to go to the property, but Schlagel called them off and ordered them not to respond.  (Id. ¶ 30).  Medic 29's general policy is to break into houses that they are sent to on welfare checks if there is no response to a request for entry.  (Id. ¶ 31).

Chief Schlagel oversaw the response to the residence, and West Wyoming Borough Police Department Patrolman Joshua Seguine assisted him.  (Id. ¶¶ 32-33).  The two officers knocked on Hromek's front and back doors and received no response.  (Id. ¶¶ 34-35).  Both doors were locked.  (Id. ¶ 36). Police reports indicate that all the windows were also locked.  Evidently,

---

[2] The complaint does not reveal Defendant Schlagel's first name.

however, one window, with an unsecured air conditioner was unlocked. (Id. ¶ 37).

After receiving no response at the doors, Schlagel telephoned Scutt and told her that it appeared no one was home. (Id. ¶ 38). Scutt informed him that Hromek was indeed at the house. (Id. ¶ 39). Schlagel said that he could not enter the house without a key. (Id. ¶ 40). Scutt stated that she was the only person with a key but due to her distance from the house, it would take at least thirty minutes for her to travel there. (Id. ¶ 41). Again Scutt explained that Hromek had a rope around his neck and urged Schlagel to break into the property. (Id. ¶ 42). Schlagel declined and instead waited thirty minutes for Scutt to arrive with the key before entering the property to check on Hromek. (Id. ¶ 44). While they waited for thirty minutes Schlagel and Seguine did nothing to assist Hromek. Seguine wanted to break into the house. (Id. ¶¶ 46-47). Schlagel instructed him not to do so. (Id. ¶ 47).

When the key arrived, the police entered the house and found Hromek's body sitting on a staircase with a rope around his neck that was tied to the banister at the top of the stairs. (Id. ¶ 51). The body was still warm but had no pulse. (Id. ¶ 53). Scutt and her friend, who are both nurses, asked to be allowed to provide medical assistance to Hromek, but Schlagel denied them access to the house. (Id. ¶ 58). Eventually, Medic 29 arrived on the scene, but it was too

late to help Hromek.  (Id. ¶ 59).  The coroner pronounced him dead at 4:20 a.m. and listed his cause of death as "asphyxiation due to hanging."  (Id. ¶¶ 60-61). Due to Schlagel's actions following the 911 call, it took approximately fifty minutes before any emergency responders were permitted to enter the house. (Id. ¶ 63).

Based upon these facts, plaintiffs filed the instant complaint which raises the following six causes of action:

1) Count One – State Created Danger versus Defendant Schlagel;

2) Count Two – Civil Right Violation under 42 U.S.C. § 1983 versus Defendant Exeter;

3) Count Three – Violation of the Americans with Disabilities Act versus Defendant Exeter;

4) Count Four – Violation of Pennsylvania's Rehabilitation Act versus Defendant Exeter;

5) Count Five – Wrongful Death pursuant to 42 PA. CONS. STAT. § 8301versus Defendant Schlagel; and

6) Count Six – Survival Action pursuant to 42 PA. CONS. STAT. § 8302 versus Defendant Schlagel.

In response to the complaint, both defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, bringing the case to its present posture.

## Jurisdiction

As plaintiffs bring suit pursuant to several federal statutes, the court has federal question jurisdiction.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Standard of review

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the

complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although all of the complaint's factual averments must be accepted as true, the court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

As noted above, both defendants have filed motions to dismiss.  The court will address each one separately, beginning with the motion filed by Defendant Schlagel.

**I.  Defendant Schlagel's Motion To Dismiss**

Three of the six counts contained in plaintiffs' complaint are directed at Defendant Schlagel.  Schlagel seeks dismissal of all of these claims.

### A.  Count One – State Created Danger

Count One of plaintiffs' complaint asserts a cause of action for state created danger.  (Doc. 1, Compl. ¶¶ 65-72).  The gist of this cause of action is that Defendant Schlagel ignored Hromek's suicidal state and actively prevented others from entering the house and providing aid.  Thus, according to the plaintiffs, Schlagel made the decedent more vulnerable to harm and violated his

constitutional rights.  Defendant Schlagel argues that he had no duty to protect Hromek from self-inflicted harm and moves to dismiss this count.  After a careful review, the court will deny the motion to dismiss Count One.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  Generally, the Due Process Clause does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens or themselves. See DeShaney v. Winnebago Cnty. Dept. of Soc. Svcs., 489 U.S. 189, 195–96 (1989).  But the state does assume such a duty of protection "when it affirmatively places a person in a position of danger that the person would not otherwise have faced ... . Then, the government must protect people from the dangers it created."  Mears v. Connolly, 24 F.4th 880, 883 (3d Cir. 2022) (internal editing marks, quotation marks and citation omitted).  This doctrine is called the state created danger theory.  It is "utilized to find a constitutional tort duty under § 1983 outside of a strictly custodial context[.]" D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1373 (3d Cir. 1992). Under the "state-created danger" theory, courts ask "whether the state actors involved affirmatively acted to create plaintiffs danger, or to render him or her more vulnerable to it." Id. (emphasis in the original).  A plaintiff must establish the following four factors to prevail on a state-created danger claim:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 304–05 (3d Cir. 2006).

For purposes of the present motion, Defendant Schlagel challenges the third factor and the fourth factor.[3]  The third factor of the state created danger theory is whether a relationship existed between the state and the plaintiff - here the decedent - such that the decedent was a foreseeable victim.  Defendant argues that Hromek was more of a general member of the public, not a discrete class of persons subject to potential harm brought about by the state's actions.  After a careful review, the court disagrees.

_____

[3]Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983 ("section 1983").  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  Initially, Defendant Schlagel argues that plaintiffs have not alleged the violation of a specific constitutional right that can be redressed through a section 1983 action.  The complaint does not specifically mention a constitutional right, but it does explicitly set forth a claim for state created danger.  As set forth above, the state created doctrine is grounded in the Fourteenth Amendment.  Thus by raising the state created danger, plaintiffs implicitly raise a Fourteenth Amendment claim, which may be pursued under section 1983.

In support of his position, Defendant Schlagel relies on Bensinger v. Twp. of Hegins, Civ. No. 3:15cv1450, 2016 WL 124353 (M.D. Pa. Mar. 30, 2016). In Bensinger, police were called to the Bensinger home in response to a call from a woman asking for the police. Id. at *1.  The police found Mrs. Bensinger in a highly intoxicated state locked in the bathroom. She had evidently had a non-violent argument with her husband and wanted him removed from their home. Id.  The responding officer saw that the husband and minor children were removed from the residence.  The officer spoke to Mrs. Bensinger through the bathroom door and told her that her husband and children had been removed. Id.  He then asked her if she need any further help or Emergency Medical Services ("EMS").  She indicated that she did not need any further help or EMS. Id.  The officer did not ask if any firearms were located in the house nor did he restrict her access to firearms.  He never called EMS or Mental Health Service to determine if she was in a mental health crisis and a danger to herself.  Id.  Later that night she fatally shot herself.  Id. *2.

A civil rights suit was brought based upon the state created danger theory. The Bensinger court found that the plaintiff had not established that the harm caused, Mrs. Bensinger's suicide, was foreseeable and fairly direct.  The plaintiff in that case argued that the police should have taken steps to ensure that Mrs. Bensinger had no access to firearms.  However, the court reasoned that the

police were aware that Mrs. Bensinger had a drunken, non-violent fight with her husband, and it was not foreseeable that she would commit suicide. Id.* 4. The police had no prior relationship with her and were unaware of any medical condition that she may have had that would have warranted any additional safety precautions. Id.

The Bensinger case describes a situation where the police had no prior relationship with an individual and were unaware of any medical condition that the individual suffered from. However, where police do have information of an individual's mental and medical conditions, harm can be deemed foreseeable. See Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003).

Here, the facts as alleged are much different from those in Bensinger. Defendant Schlagel was informed of the risk that Hromek might commit suicide. Schlagel was thus aware that Hromek could possibly harm himself, and he visited Hromek's house to check on his welfare. That Hromek did commit suicide was therefore foreseeable, unlike in Bensinger, and as such, Defendant Schlagel's argument on this point is unconvincing.

Next, Defendant Schlagel argues that plaintiffs have failed to allege facts that would establish that he used his authority in any way that created a danger to the decedent or rendered him more vulnerable to danger. Defendant Schlagel

11

argues that the complaint is devoid of facts that would support a finding that the use of his authority brought about the suicide.

Plaintiffs' complaint, however, does not allege that Defendant Schlagel brought about the suicide. Instead of bringing about the suicide, the complaint alleges that Defendant Schlagel used his authority and took affirmative actions to cut Hromek off from sources of aid.  Specifically, the complaint alleges that Defendant Schlagel stopped Medic 29 from responding to the home.  This point is significant in that, when on a welfare check, Medic 29 would force entry into the residence if no one responded from inside.  (Doc. 1, Compl. ¶¶ 30-31).  Whereas, Defendant Schlagel refused to force entry into the house.

Further, Scutt, who had a key to the residence and thus allegedly had authority to permit entry into the home, requested Defendant Schlagel to break in, however, Defendant Schlagel refused.  (Id. ¶¶ 41-42).  Defendant Schlagel also ordered Officer Seguine not to force entry into the home.  (Id. ¶ 47).  Finally, after he had entered the house and found Hromek, Defendant Schlagel refused to allow Scutt and her friend, who were both nurses, from entering the house to provide medical assistance to Hromek.  (Id. ¶ ¶ 55-58).   All of these alleged actions led to plaintiff's harm according to the complaint.[4]

---

[4] An important, potentially dispositive, question exists as to whether it would have been too late to assist Hromek even had Defendant Schlagel broken into the house immediately upon his

Plaintiffs' allegations are sufficient to defeat Defendant Schlagel's motion to dismiss.  Accordingly, based upon the above reasoning, Defendant Schlagel's motion to dismiss Count I will be denied.

### B. Count V – Wrongful Death

Count V of plaintiff's complaint raises a wrongful death claim on behalf of Hromek's minor son, N.H., against Defendant Schlagel pursuant to 42 PA. CONS. STAT. § 8301.  (Doc. 1, Compl. ¶¶ 106-109).  Defendant Schlagel moves to dismiss this count.

"Pennsylvania's Wrongful Death Act . . . allows a spouse, children or parents of a deceased to sue another for a wrongful or neglectful act that led to the death of the deceased."  Hatwood v. Hosp. of the Univ. of Pa., 55 A.3d 1229, 1235 (Pa. Super. Ct. 2012).  Thus, wrongful death actions "are not substantive causes of action; rather they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."  Maldet v. Johnston Pol. Dep't, No. 2:19cv325, 2019 WL 2435869, at *5 (W.D. Pa. June 11, 2019) (internal quotation marks and citations omitted).   Defendant argues that the wrongful death claim fails because plaintiffs have not asserted a plausible claim for relief against Defendant Schlagel for Hromek's death under the state created danger

arrival. This matter would best be addressed at trial or summary judgment once discovery has been completed.

13

theory.  Therefore, according to Defendant Schlagel, he cannot be liable for the death, and plaintiffs cannot have a wrongful death action against him.  As noted above, however, the court will not dismiss the state created danger cause of action.  Accordingly, as defendant could potentially be found liable under that theory, dismissal of the wrongful death claim at this time is inappropriate.[5]

### C. Count VI – Survival Action

Count VI of plaintiffs' complaint asserts a survival action against Defendant Schlagel pursuant to 42 PA. CON. STAT. § 8302.  (Doc. 1, Compl. ¶¶ 110-112).  Plaintiffs seek to recover damages suffered due to Hromek's death, including the monetary value of decedent's earnings power during his remaining life expectancy, physical pain and suffering, and mental pain and suffering.  (Id. ¶ 112).  Defendant Schlagel also moves to dismiss this count.

Like the wrongful death cause of action, a survival action is not an independent cause of action, but it is "a vehicle for the decedent's estate to press a cause of action that the decedent would have had, had [he or] she lived." Bensinger, 2016 WL 1242353 at *6.  Defendant Schlagel argues that because

---

[5] Defendant also argues that a wrongful death case cannot be based upon a suicide.  Here, however, plaintiff does not allege that defendant caused the suicide but that he prevented assistance from reaching Hromek in time to save him.  Accordingly, merely because the death was by suicide does not prevent plaintiff from pursuing a wrongful death action.

plaintiffs do not have a valid cause of action which would hold him liable for the harm caused to Hromek, they cannot have a valid survival action.

As set forth above, however, the plaintiffs have stated a claim based on the state created danger theory.  Accordingly, it is possible Defendant Schlagel could be found liable for the harm, and dismissal of the survival action is inappropriate at this time.

## II.  Borough of Exeter's Motion to Dismiss

The Borough of Exeter has filed a motion to dismiss the claims that plaintiffs' complaint asserts against it.  That is, Count Two – violation of civil rights under 42 U.S.C. § 1983; Count Three – violation of the Americans with Disabilities Act; and Count Four – violation of the Rehabilitation Act.  The court will address each count separately.

### A.  Count Two – Constitutional violation pursuant to 42 U.S.C. § 1983

Count Two of plaintiffs' complaint alleges a cause of action for a constitutional violation pursuant to 42 U.S.C. § 1983.  Plaintiffs claim that the Borough of Exeter ("Exeter") had policies, practices and customs which led to a violation of Hromek's constitutional rights and made him suffer damages and death.  (Doc. 1, Compl. ¶¶ 73-79).  Exeter moves to dismiss this count.

The law provides that local governments, such as the Borough of Exeter, "cannot be held liable under § 1983 on a *respondeat superior* theory."  Monell v.

Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 691(1978).  Thus,

municipalities may not be held liable under section 1983 for injuries solely

inflicted by its employees; rather, the injuries must be inflicted by the execution of

a government's policy or custom, "whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy."  Id. at 694.

"Official municipal policy includes the decisions of a government's lawmakers, the

acts of its policymaking officials, and practices so persistent and widespread as

to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61

(2011)(citations omitted). A policy need not be passed by a legislative body, or

even be in writing, to constitute an official policy; a pertinent decision by an

official with decision-making authority on the subject constitutes an official policy.

Porter v. City of Philadelphia, 975 F.3d 374, 383 (3d Cir. 2020)(citing Pembaur v.

City of Cincinnati, 475 U.S. 469, 483-84 (1986)).

> The Third Circuit Court of Appeals has explained as follows:

> There are three situations where acts of a government employee may
> be deemed to be the result of a policy or custom of the governmental
> entity for whom the employee works, thereby rendering the entity liable
> under § 1983. The first is where "the appropriate officer or entity
> promulgates a generally applicable statement of policy and the
> subsequent act complained of is simply an implementation of that
> policy." Bryan County [v. Brown], 520 U.S. [397] at 417, 117 S.Ct. 1382
> (Souter, J., dissenting) [(1997)]. The second occurs where "no rule has
> been announced as policy but federal law has been violated by an act
> of the policymaker itself." Id. Finally, a policy or custom may also exist
> where "the policymaker has failed to act affirmatively at all, [though]
> the need to take some action to control the agents of the government

16

'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " Id. at 417–18, 117 S.Ct. 1382 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); see also Berg[ v. Cnty. of Allegheny, 219 F.3d [261]at 276 [(3d Cir. 2000)] (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

Defendant Exeter moves to dismiss Count Two on the basis that plaintiffs fail to sufficiently allege a borough policy or custom that was the proximate cause of a constitutional violation.[6]

Plaintiffs' complaint alleges the following as the relevant policies, practices and/or customs followed by Defendant Exeter:

> a.  Avoiding breaking into properties where there is no suspicion of criminal activity even where a person's life is in danger;
> b. The failure to seek and/or accept authority to enter a property where a person's life may be in danger;
> c. Placing concerns about damage to property and/or potential civil actions over the lives of suicidal and/or mentally unstable individuals; and,
> d. The failure to train its police officers on responding to calls related to the welfare of suicidal and/or mentally unstable callers.

(Doc. 1, Compl. ¶ 74).

---

[6] Defendant Exeter also alleges that plaintiff has not sufficiently pled the constitutional right which plaintiff claims was violated.  As noted above, although the complaint does not explicitly mention the Fourteenth Amendment Due Process Clause, it does invoke the state created danger theory which involves the Due Process Clause. Accordingly, the court finds defendant's argument here unconvincing.

Defendant Exeter argues that plaintiffs improperly make general allegations of the existence or absence of policies, without alleging when the policies were adopted, by whom, and the content of the alleged policies.  The court finds that these allegations are sufficient to defeat a motion to dismiss. While the assertions may not be very specific, the court is cognizant of the fact that this ruling comes prior to discovery.  Plaintiffs may need discovery to set forth the policies, practices, and training provided by Exeter more specifically. Thus, the motion to dismiss Count Two will be denied regarding whether plaintiffs have sufficiently alleged a policy, practice, and/or custom.

Additionally, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances[,]" but liability only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 480-81 (footnote omitted). An official has final policymaking authority if "as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question" and if "the official's authority to make policy in that area is final and unreviewable." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (internal citations omitted) (emphasis removed). "Proving that a municipal official is a final policymaking authority is a fundamental element" of

a Section 1983 action. LaVerdure v. Cnty. of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003).

Plaintiffs assert that because Defendant Schlagel is the police chief, his actions constitute Exeter's policy for policing.  (Doc. 1, Compl. ¶ 75).  The Pennsylvania Borough Code, however, provides that the mayor has "full charge and control of the chief of police and the police force."  8 PA. CONS. STAT. ANN. § 1123.1.  Thus, it is the mayor, not the chief of police, who is the policymaker for the police department, and the court does not accept the complaint's legal conclusion to the contrary.  See Santiago Warminster Twp., 629 F.3d 121, 135 n.11 (3d Cir. 2010) (concluding that in a township, the police chief is not a final policymaker as the Pennsylvania Municipal Code vests authority of township police officers with the township board of supervisors and such matters are question of law, not of fact).

For the foregoing reasons, the motion to dismiss Count Two of plaintiffs' complaint will be denied.  It remains possible that Defendant Exeter could be held liable for the policies and practices alleged in plaintiffs' complaint.

### B. Count Three – Americans with Disabilities Act

Count Three of plaintiffs' compliant raises a cause of action for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  (Doc. 1,

Compl. ¶¶ 80-101).[7]  Plaintiffs allege that Exeter was aware that Hromek was disabled within the meaning of the ADA and did not make reasonable accommodations to secure his safety.  Exeter moves to dismiss this count on the basis that plaintiffs have failed to allege the elements of an ADA claim.  After a careful review, the court agrees.

Under Title II of the ADA, the plaintiffs must demonstrate the following with regard to Hromek: "(1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."  Haberle v. Troxell, 885 F.3d 170, 179 ((3d Cir. 2018) (internal quotation marks and citation omitted). See also  42 U.S.C. § 12132.

Here, plaintiffs allege that Hromek was disabled within the meaning of the ADA in that he was mentally unstable and suicidal.  (Doc. 1, Compl. ¶ 81). Although, not explicitly put in the terms of the ADA's language, the complaint appears to allege that Hromek was denied the benefits of Exeter's services, in

---

[7] The plaintiffs' complaint fails to indicate which section of the ADA plaintiffs seek to hold Defendant Exeter liable under.  The plaintiffs' brief addresses Title II of the ADA, (Doc. 12, Pls'. Oppo. Br. at ECF 15), and therefore, that is the section the court will examine.  The remaining Titles of the ADA appear inapplicable, Title I covers employment, Title III covers public accommodations, and Title IV covers telecommunications.

that he was not provided timely medical assistance needed because he suffered from a mental disability.

Defendant Exeter first argues that the plaintiffs have not properly alleged that Hromek was disabled within the meaning of the ADA.  Under the ADA to be considered "disabled" a plaintiff must allege that: he has a mental impairment that substantially limits one or more major life activities; a record of such impairment; or that he is regarded as having such an impairment.  42 U.S.C. § 12102(1).  Here, plaintiffs allege that Hromek had a mental impairment.  (Doc. 1, Compl. ¶ 81).  Specifically, the complaint alleges that "Mr. Hromek was disabled within the meaning of the Americans with Disabilities Act as he was mentally unstable and suicidal."  (Id.)

Defendant Exeter argues that the complaint's allegations are not sufficient because they do not set forth which major life activities were substantially limited by the decedent's mental impairments.  The law provides, however, that "the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis."  28 C.F.R. § 35.108(d)(1)(ii).  At this early stage of the proceedings, plaintiffs are not required "to go into the particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009).  It is sufficient if the complaint identifies an impairment of

which the defendant was aware and that such an impairment constitutes a disability under the law.  Id.  Here, plaintiffs have made such allegations. Accordingly, Count Three will not be dismissed on this ground.

The second argument raised by Defendant Exeter is more compelling. Defendant Exeter argues that the gravamen of Count Three of plaintiffs' complaint is that the borough violated the ADA by denying medical treatment to Hromek.  The law provides, however, that the denial of medical treatment "is not encompassed by the ADA's prohibitions."  Iseley v. Beard, 200 F. App'x 137, at *4 (3d Cir. 2006) (citing Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir. 1996) (holding "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners[.]").[8]   Accordingly, the court finds that because plaintiffs complain of a denial of medical treatment, and such a denial is not encompassed by the ADA's prohibitions, Count Three will be dismissed.

Additionally, to state a proper ADA claim, the denial of benefits or the discrimination must be *because* of the disability at issue.  Mutschler, 445 F. App'x at 621.  Here, the complaint alleges Defendant Schlagel's actions were based not upon discrimination due to Hromek's mental disability but upon a fear of civil liability if the police broke into the residence instead of waiting for the key.  (Doc.

---

[8] Plaintiffs do not respond to this argument in their opposition brief.

1, Compl. ¶ 43).  Thus, plaintiffs have not sufficiently pled disability discrimination.

In summary, plaintiffs cannot recover under the ADA for a failure to provide medical care, and the complaint itself alleges that the reason for the actions at issue were not disability discrimination but fear of civil liability.  Therefore, the plaintiffs' ADA claim, Count Three will be dismissed.

### C. Count Four – Rehabilitation Act

Count Four of plaintiffs' complaint alleges a violation of the Rehabilitation Act, 29 U.S.C. § 794.  (Doc. 1, Compl. ¶¶ 102-105).  Without much specificity, plaintiffs' complaint claims that Exeter's actions violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Defendant Exeter moves to dismiss this count of the complaint.

The Rehabilitation Act and the ADA have the same standard for liability and are to be interpreted consistently.  See_ Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 166-67 (3d Cir. 2015); McPherson v. Cnty. of Dauphin, No. 19-1865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020).   Thus, for the reasons set forth above with regard to the ADA, plaintiffs' Rehabilitation Act claim will be dismissed.

**Conclusion**

For the foregoing reasons, Defendant Schlagel's motion to dismiss will be denied. Defendant Exeter's motion to dismiss will be granted in part with regard to the ADA and the Rehabilitation Act, (Counts Three and Four), but will be denied in all other respects. An appropriate order follows.

Date: _9/17/24_

_____
JUDGE JULIA K. MUNLEY
United States District Court